```
                      UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * *
UNITED STATES OF AMERICA      *
                              *
            vs.               *      CRIMINAL ACTION
                              *      No. 03-10029-DPW
JOHN MENDONCA                 *
                              *
* * * * * * * * * * * * * *

            BEFORE THE HONORABLE JOSEPH L. TAURO
                 UNITED STATES DISTRICT JUDGE
                         SENTENCING

A P P E A R A N C E S

            UNITED STATES ATTORNEY'S OFFICE
            1 Courthouse Way, Suite 9200
            Boston, Massachusetts 02210
            for the United States
            By:  Peter K. Levitt, AUSA


            LAW OFFICE OF JAMES J. CIPOLETTA
            385 Broadway, Suite 307
            Revere, Massachusetts 02151
            for the defendant
            By:  James J. Cipoletta, Esq.



                                    Courtroom No. 22
                                    John J. Moakley Courthouse
                                    1 Courthouse Way
                                    Boston, Massachusetts 02210
                                    April 26, 2012
                                    2:15 p.m.


                    CAROL LYNN SCOTT, CSR, RMR
                       Official Court Reporter
                  One Courthouse Way, Suite 7204
                     Boston, Massachusetts 02210
                           (617) 330-1377
```

**P R O C E E D I N G S**

  **THE CLERK:** This is criminal matter No. 03-10029, the United States of America versus John Mendonca. Counsel please identify themselves for the record.

  **MR. LEVITT:** Peter Levitt on behalf of the government. Good afternoon, Your Honor.

  **THE COURT:** Good afternoon.

  **MR. CIPOLETTA:** Your Honor, good afternoon. James Cipoletta for John Mendonca.

  **THE COURT:** Okay. He is here with you.

  **MR. CIPOLETTA:** He is with me, yes.

  **THE COURT:** Sit down everybody, please.

  All right. We are here for disposition?

  **MR. CIPOLETTA:** Yes, Your Honor.

  **MR. LEVITT:** Correct, Your Honor.

  **THE COURT:** And we have, as I am understanding, I have a (c)(1) plea before me?

  **MR. LEVITT:** That's correct, Your Honor.

  **THE COURT:** Okay. Do you want to just walk me through it and then we will --

  **MR. LEVITT:** I will, Your Honor. And the (c) plea is expressly intended to resolve two cases, Your Honor, both this case and the case which is criminal No. 08-10333 which is scheduled for disposition before Judge Gorton at

1  three o'clock today.
2      As you can see from the docket, Your Honor, this is
3  quite an old case. It was charged in 2003. It was
4  originally before Judge Lasker. And if you'd like, I'll
5  give you a little background on the case that --
6      **THE COURT:** Go ahead.
7      **MR. LEVITT:** -- relative to the plea agreement
8  itself.
9      **THE COURT:** I have read your papers but go
10 ahead. Take as much time as you want, having in mind that I
11 want to make sure you are with Judge Gorton by the time you
12 are supposed to be there.
13     **MR. LEVITT:** Yes, Your Honor. Thank you.
14     The original indictment was, the indictment in this
15 case was a 72-count indictment for marijuana trafficking and
16 a variety of money laundering offenses. The defendant was
17 in custody from the outset of the case and the government
18 agreed to his release in 2006 and so he was on pretrial
19 release starting in 2006, in September of 2006, and then two
20 years later, in September of 2008 he was charged again with
21 federal marijuana trafficking and that is the Gorton case.
22 So that case started when he was on pretrial release in this
23 case.
24     One of the reasons the government has agreed to
25 release several years after the fact, well after the

1    indictment, was because of the cooperation in this case and
2    all of that cooperation is public and I confirmed with
3    Mr. Cipoletta that his client has no problem with that.
4    We've talked about it in open court.  It was extraordinary
5    cooperation.  You sentenced his wife Ms. Mendonca who was
6    also charged in that original case so you have some
7    familiarity with it.  And that cooperation led to the
8    indictment and conviction of two prominent lawyers in Rhode
9    Island that the Court is familiar with.
10            The case is also extraordinary in addition to the
11   cooperation, extraordinary for the fact that Mr. Mendonca
12   despite his cooperation went back to selling marijuana.
13   He -- and this puts the plea agreement in some
14   perspective -- when the government agreed to his release in
15   2006, part of the reason was that he was getting to a point
16   where he might be facing time served based on the extent of
17   his cooperation.  So the fact that he then went out and
18   committed these additional crimes and got charged federally
19   with them has had a tremendous impact on what might have
20   happened with his life had he simply stayed the course when
21   he was released here in 2006.
22           So, nevertheless, he was charged.  He's been again
23   in custody since September of 2008.
24           The plea agreement, the bottom line with respect to
25   the plea agreement is that with respect to both of these

1  cases the parties agree on a sentence of 168 months
2  imprisonment, followed by eight years of supervised release,
3  the eight years of supervised release is the mandatory
4  statutory period of supervised release.
5  　　　　　The 168 months is the middle of the highest of the
6  two guideline ranges in the two cases.  And that is in this
7  case where the parties have calculated the guideline range
8  of 151 to 188 months.  That's based on a total offense level
9  of 31 and a criminal history category IV.
10 　　　　　The guideline range in the Gorton case is
11 considerably lower.  It's 78 to 97 months, largely because
12 of the criminal history category, in part, because the
13 criminal history category is lower because some of the
14 convictions had timed out.
15 　　　　　I will note that Probation in this case calculated
16 a higher guideline range.  Probation did not give the
17 defendant credit for acceptance of responsibility which is a
18 reasonable position to take given the fact that he committed
19 these additional crimes while on pretrial release.
20 　　　　　Under Probation's calculation, his range is 210 to
21 262.  No matter which way you slice it, whether you agree
22 with the government in part and with the parties that he
23 should get acceptance.  Basically our position is he should
24 get acceptance based on, in part based on the extraordinary
25 cooperation and on the facts that really at every level of

1   the prosecution investigation he has been cooperative,
2   including the second time he was arrested.
3              But either way, if you were to take the view that
4   he doesn't get acceptance, we would be asking for the same
5   sentence under the plea agreement under 3553.  We think it's
6   a reasonable sentence, 14 years with eight years of
7   supervised release.
8              A couple of housekeeping matters, Your Honor.
9              **THE COURT:**  I want to make sure I have got it
10  right, 168?
11             **MR. LEVITT:**  168, Your Honor.
12             **THE COURT:**  Go ahead.
13             **MR. LEVITT:**  And there's been, well,
14  addressing in terms of housekeeping, there are two motions
15  that the defendant filed.  One is to strike notice, the
16  notice of prior conviction by the government.
17             There is two, there is an 851 that is filed in this
18  case which is based on the conviction in the Gorton case.
19  That creates a ten-year mandatory minimum in this case.  The
20  defendant is not disputing that.  There is a state
21  conviction that we filed a notice of an 851 on from July 17,
22  2003.  Probation determined that that was not a drug
23  trafficking offense and we don't disagree.
24             So just in terms of the record, the government
25  agrees to withdraw the notice of the 851 enhancement with

```
 1    respect to that July 17, 2003 conviction.
 2              THE COURT:  You have no objection to that,
 3    Mr. Cipoletta?
 4              MR. CIPOLETTA:  No, Your Honor, thank you.
 5              THE COURT:  Okay.
 6              MR. LEVITT:  And then the defendant also filed
 7    a motion for a termination of custodial status having to do
 8    with what credit he gets for state time that he has done.
 9    At various times throughout the last ten years he has been
10    in state custody or federal custody.  The government's
11    position, I think Probation takes the same view, is that the
12    calculation of what -- of time served is a matter for the
13    Bureau of Prisons to determine and not for the Court.
14         The agreement of the parties is on a sentence of
15    168 months.  The (c) plea agreement does not contemplate
16    anything other than a sentence of 168 months with
17    appropriate consideration of time served.  He is going to
18    get significant amounts of time served.  What exactly those
19    are in terms of how to do it with this calculation I don't
20    know and I don't think Probation knows and I don't think the
21    Court is in a position to know.
22              THE COURT:  Did you say eight years?
23              THE PROBATION OFFICER:  For what, I'm sorry?
24              THE COURT:  Supervised release.
25              MR. LEVITT:  Eight years.  It's the mandatory
```

1    term.

2             **THE PROBATION OFFICER:**  It's the mandatory
3    term in the Judge Gorton case.

4             **THE COURT:**  I thought that I heard you say
5    that.

6             **MR. LEVITT:**  Yes.

7         So the government's position is that there really
8    is no need for the Court to address what amount of credit
9    for time served he should get.  The most the Court could do
10   in any event is simply state its intent with respect to how
11   much credit of the time served the Bureau of Prisons should
12   give him but ultimately it's a determination for the Bureau
13   of Prisons.

14            **THE COURT:**  Do you agree with that,
15   Mr. Cipoletta?

16            **MR. CIPOLETTA:**  Yes, Your Honor.  And I would
17   address that just briefly when it's my turn.

18            **THE COURT:**  Okay.

19            **MR. LEVITT:**  So unless the Court has any
20   questions, the only --

21            **THE COURT:**  Why don't we -- I am not trying to
22   cut you off, either of you.  Are you all through?

23            **MR. LEVITT:**  No, I am through, Your Honor.

24            **THE COURT:**  All right.  Then we will give
25   Mr. Cipoletta a chance.  Go ahead.

1                    **MR. CIPOLETTA:**  Your Honor, I think that --

2                    **THE COURT:**  First of all, you do agree with

3        his (c) sentence; right?

4                    **MR. CIPOLETTA:**  Yes.  Yes, Your Honor, the 168

5        months, eight years of supervised release and special

6        assessment and forfeiture.

7              I became involved in the case when Mr. Mendonca was

8        indicted in the case that Judge Gorton will resolve at three

9        o'clock.  It was several years after the commencement of

10       this case.  When I began working with Mr. Levitt on behalf

11       of the government to try to put together a global resolution

12       since Mr. Mendonca had already entered his plea of guilty in

13       this case before Your Honor a couple of years prior, we

14       wanted to structure a sentence that was sufficient but not

15       excessive and that would fit the framework that we had

16       agreed upon and we think that this is a fair sentence.

17             And Mr. Mendonca has been involved intimately in

18       the discussions and has sent along his comments along the

19       way.

20             The one thing that Mr. Mendonca is concerned about

21       is the credit for the time that he spent in detention

22       between the dates of March 15, '02 and the 29th of June '02.

23       He was arrested initially in this by state authorities and

24       then was indicted federally for the underlying acts.  And

25       the reason that we filed the motion for, requesting the

1   Court to determine his custodial status is simply to, within
2   the whole scheme of this case, to determine that the state
3   case is directly related to this case.
4           Now, that doesn't change anything with respect to
5   the plea agreement or the sentence but with respect to the
6   calculation and classification by the Bureau of Prisons, we
7   think that it could have an affect on their calculation of
8   how much time he is going to serve and how much time he is
9   going to get as credit for while he was in detention.
10          And if the Court puts in the judgment or is in
11  agreement that that arrest and the Bristol County indictment
12  is directly related to this case, and it is actually the
13  underlying acts, and I believe also it's listed in the
14  offense conduct in the PSR, then that will give Mr. Mendonca
15  what he's expecting to get from BOP with respect to the time
16  he actually serves.
17              **THE COURT:**  Do you have any objection to that?
18              **MR. LEVITT:**  Well, I guess I would say this,
19  Your Honor.  I'll start with the fact that it's a
20  three-month period we are talking about.  The --
21              **THE COURT:**  Well, it is not much unless you
22  have to do it.
23              **MR. LEVITT:**  No, no, I understand.  I am just
24  putting it in context here, Your Honor.
25          The state case that he is talking about is related

```
 1   in large measure --
 2              THE COURT:  Well, could I say just that?
 3              MR. LEVITT:  You could say that.
 4              THE COURT:  Do you agree with that?
 5              MR. LEVITT:  I'd agree with that.
 6              THE COURT:  The parties -- all right.  So
 7   we've got that, Zita.
 8              MR. LEVITT:  Well -- and the only reason that
 9   I qualify it is that he's also charged in a state case with
10   possession of a firearm.
11              THE COURT:  Well, we'll just say in large
12   measure here.
13              MR. LEVITT:  That's fine.
14              THE COURT:  Okay.  Is that satisfactory?
15              MR. CIPOLETTA:  It is.  And with respect to
16   the firearm, I think in calculating the guidelines he got a
17   two-point enhancement for that firearm in the state case so
18   it does keep showing up here.  But in answer directly to
19   Your Honor's question, yes, it's sufficient.
20              THE COURT:  Have you got that, Zita?
21              THE CLERK:  Yes.
22              THE COURT:  All right.  Mr. Mendonca, you are
23   about to be sentenced and as one who faces sentencing you
24   have the right to tell me anything that may be on your mind
25   if you would care to do so.
```

1          If you prefer to remain silent, you may remain
2   silent without the fear of being prejudiced.  If you want to
3   speak, go ahead.  If you don't, that's okay.
4          **THE DEFENDANT:**  If you don't mind, I'd like to
5   say -- excuse me, Your Honor.  If you don't mind, I'd like
6   to say a few words.
7          **THE COURT:**  Go ahead.
8          **THE DEFENDANT:**  Thank you, sir.  Thank you,
9   Your Honor.
10         First I wanted to apologize and ask for forgiveness
11  from God, from Your Honor, the Court, and particularly from
12  Mr. Levitt, Probation Officer Mr. Cronin, Probation Officer
13  Ms. September Brown, Probation Officer Ms. Jennifer Sinclair
14  and most of all my family, my mother, my wife and my
15  disabled sister who sits behind me.
16         They all, you know, I let them down.  They believe
17  in me and I let them down and disappointed them.  And I let
18  down and disappointed everyone involved in this situation by
19  getting re-arrested in this new case and I especially wanted
20  to ask forgiveness for that.  I take full responsibility for
21  all my actions and these crimes and everything that I've
22  done.  I have no one to blame but myself and I fully regret
23  the things that I have done.
24         And it's been a real, real hard time for our
25  families.  I did have a chance to be home, to be free

1   because, you know, I risked my life in the John Sicillini
2   (ph.) and Joe Ifialaqua (ph.) case doing things and I threw
3   that all away with the new arrest and with that it caused
4   hardship on my family, myself, most of all my family.  And
5   through the time I've been incarcerated I've lost my
6   brother, my sister, both, one in 2008, one in 2009.  So it
7   has been hard on my mother and our family.  I sat by, had to
8   listen and watch as my family has struggled and suffered
9   without being able to do anything through my own fault.
10  And, you know, I've learned, I've learned a lot of hard
11  lessons with all this and, you know, one in particular that
12  I want to talk about is that, you know, that time is
13  precious and that -- excuse me.
14          Time is precious and that, you know, we don't
15  always have tomorrow to do the things we want to do.  And
16  that, and that I have already lost and wasted a lot of time.
17  And I just want to say that I'll do everything in my power
18  not to commit another crime that's going to take me away
19  from my family ever again once this is over.
20          I pray that God watch over them and that they'll be
21  home, still be alive and safe.  Actually my mom will be 80
22  years old when I get home.  Excuse me.
23          I know I deserve punishment, Your Honor, and all I
24  can ask is for compassion, some mercy, some leniency and
25  Your Honor not give me any more than the 14-year sentence

1  that we agreed upon.
2         And I just want to try to make a better life when
3  this is all over and hopefully be with my family if they're
4  still around.
5         Thank you.
6              **THE COURT:** Anything else anybody wants to
7  say?  No?
8              **MR. LEVITT:** No, Your Honor.
9              **MR. CIPOLETTA:** No, Your Honor.
10             **THE COURT:** Okay.  I am going to adopt the
11 recommendation of the parties and the (c) plea, 168 months,
12 eight years of supervised release.  What else?
13             **THE PROBATION OFFICER:** Your Honor, we have
14 several requests.
15        The first would be a judicial recommendation that
16 the defendant participate in the Probation Office's Restart
17 or a cognitive behavioral program once he's released from
18 custody.
19             **THE COURT:** Any objection?
20             **MR. CIPOLETTA:** No, Your Honor.
21             **THE COURT:** Okay.
22             **THE PROBATION OFFICER:** We have several
23 mandatory condition requests.  That he not commit another
24 federal, state or local crime and shall not illegally
25 possess a controlled substance.

|     |     |
| --- | --- |
| 1 | **THE COURT:** Any objection? |
| 2 | **MR. CIPOLETTA:** No, Your Honor. |
| 3 | (Whereupon, Mr. Cipoletta conferred with the |
| 4 | defendant.) |
| 5 | **MR. CIPOLETTA:** Yes. |
| 6 | **THE PROBATION OFFICER:** That he refrain from |
| 7 | the unlawful use of any controlled substance and that he |
| 8 | shall submit to one drug test within 15 days of release from |
| 9 | imprisonment and at least two periodic drug tests thereafter |
| 10 | not to exceed 104 tests per year as directed by the |
| 11 | Probation Office. |
| 12 | **THE COURT:** Any objection? |
| 13 | **MR. CIPOLETTA:** No objection. |
| 14 | **THE PROBATION OFFICER:** That he submit to the |
| 15 | collection of a DNA sample as directed by the Probation |
| 16 | Office. |
| 17 | **THE COURT:** Any objection? |
| 18 | **MR. CIPOLETTA:** No objection. |
| 19 | **THE PROBATION OFFICER:** And that he comply |
| 20 | with the standard conditions that have been adopted by the |
| 21 | Court which will be described in the judgment and are also |
| 22 | at 5D1.3C in the *Guidelines Manual*. |
| 23 | **MR. CIPOLETTA:** No objection. |
| 24 | **THE PROBATION OFFICER:** We also ask that he be |
| 25 | prohibited from possessing a firearm, destructive device or |

1    other dangerous weapon.
2             **MR. CIPOLETTA:** No objection.
3             **THE PROBATION OFFICER:** And we ask that in
4    light of the nature of this case and the money laundering
5    counts that he be required to provide the Probation Office
6    access to any financial information which may be shared with
7    the Financial Litigation Unit of the U.S. Attorney's Office.
8             **THE COURT:** Any objection?
9             **MR. CIPOLETTA:** When would that be?  I'm
10   sorry.
11            **THE PROBATION OFFICER:** During the period of
12   supervised release.
13            **MR. CIPOLETTA:** No objection.
14            **THE PROBATION OFFICER:** We also ask, Your
15   Honor, for a special assessment in this case based on the
16   number of counts, it's $7100.
17            **THE COURT:** Any objection?  That's what it is,
18   is that the math?
19            **THE PROBATION OFFICER:** Yes, Your Honor.
20            **MR. CIPOLETTA:** I think our plea agreement had
21   set out $200 in special assessment.
22            **THE PROBATION OFFICER:** The special assessment
23   is mandatory by statute, as I understand it, based on the
24   number of counts of conviction.
25            **THE COURT:** Mr. Levitt, how do you stand on

```
 1   that issue?
 2              MR. LEVITT:  Mr. Cipoletta is correct that the
 3   parties' plea agreement states a mandatory special
 4   assessment in the amount of $200.  The government stands by
 5   its plea agreement.
 6              THE COURT:  All right.  I will stand by it
 7   too.
 8              THE PROBATION OFFICER:  Your Honor, that
 9   appears to be connected to the Judge Gorton case.
10              MR. LEVITT:  Let me take a look at that and
11   make sure that that's correct.
12        Ms. Sinclair is correct in that the defendant had
13   already pled in this case so the plea agreement, while it
14   covers both cases -- no, actually, I'm sorry to flip-flop on
15   this.  I had not really focused on it.
16        I think that to be absolutely fair, that what's
17   contemplated in the plea agreement is that the special
18   assessment amount, while this is technically a plea
19   agreement for the Judge Gorton case, the language is that
20   the agreed disposition is the reasonable and appropriate
21   disposition of both cases and that covers the special
22   assessment so the government stands by its plea agreement
23   which contemplates a $200 special assessment.
24              THE COURT:  All right.  And I will adopt that
25   as my own finding on the issue.
```

1            What else?  Anything?
2                    **THE PROBATION OFFICER:**  No, Your Honor, thank
3    you.
4                    **THE CLERK:**  No fine, Judge?
5                    **THE COURT:**  What?
6                    **THE CLERK:**  No fine?
7                    **THE COURT:**  No fine.
8        All right.  Mr. Mendonca, you have been sentenced.
9    As one who has been sentenced, you have a right to appeal
10   that sentence if you'd care to do so.
11       If you don't have funds to prosecute an appeal,
12   then you will be permitted to appeal without payment of any
13   fees.  If you don't have funds for a lawyer, one will be
14   provided for you.
15       You have 14 days to file a Notice of Appeal if it
16   is your intention to do so.
17       Do you understand that?
18                   **THE DEFENDANT:**  Yes, Your Honor.
19                   **THE COURT:**  Okay.  Anything else?  Anything
20   else from anybody?
21                   **MR. LEVITT:**  No, Your Honor.
22                   **MR. CIPOLETTA:**  No, thank you, Your Honor.
23                   **THE COURT:**  You are all excused.  Thank you.
24                   **MR. CIPOLETTA:**  Thank you, Your Honor.
25                   **THE DEFENDANT:**  Thank you, Your Honor.

1              **THE CLERK:**  All rise.
2
3         (WHEREUPON, the proceedings were recessed at 2:45
4     p.m.)

C E R T I F I C A T E

     I, Carol Lynn Scott, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/S/CAROL LYNN SCOTT

---

CAROL LYNN SCOTT
Official Court Reporter
John J. Moakley Courthouse
1 Courthouse Way, Suite 7204
Boston, Massachusetts 02210
(617) 330-1377

**DATE: January 28, 2015**